IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| SUSAN E. KESSLER-MUSE, | § | Case No. 22-40123 |
| | § | (Chapter 13) |
| Debtors. | § | |

**MEMORANDUM OPINION AND ORDER REGARDING
OBJECTION TO CLAIM NO. 7 OF TEXANS CREDIT UNION**

This matter is before the Court on the objection of Susan E. Kessler-Muse (the "**Debtor**") to the allowance of the proof of claim filed by Texans Credit Union (the "**Claimant**" or "**Texans**"). The Court conducted an evidentiary hearing on the Debtor's objection on January 17, 2023. At the conclusion of the hearing, the Court invited the parties to submit post-trial briefing on several legal issues raised in their closing arguments. The parties requested several continuances of the post-trial briefing schedule and finally filed their respective briefs on March 28, 2023. The Court exercises its core jurisdiction over this matter, *see* 28 U.S.C. §§ 157 and 1334, and concludes that the Debtor's objection should be sustained, in part, for the following reasons.

**I. FINDINGS OF FACT**

1. The Debtor and her husband, John Muse, purchased a home on or about December 30, 2002. In connection with the purchase, they executed a Note in the amount of $265,000 and a Deed of Trust providing Texans with a security interest in the real property commonly known as 412 Creekside Drive, Murphy, Texas 75094 (the "**Property**").

2. The Note is a uniform Fannie Mae/Freddie Mac document for common use in Texas, as indicated by the footer: "TEXAS FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT....Form 3244 1/01." Likewise, the Deed of Trust is a uniform Fannie Mae/Freddie Mac document for common use in Texas, as indicated by the

1

footer: "TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT....Form 3044 1/01."

3. Section 6(e) of the Note provides for the payment of Texans' costs and expenses upon acceleration as follows:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

4. Section 9 of the Deed of Trust protects Texans' interest in the Property as follows:

> **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument....
>
> Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

5. In addition, Section 14 of the Deed of Trust allows Texans' to charge certain fees as follows:

> **Loan Charges**. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.

6. The Debtor began experiencing financial problems in 2014. She testified that she filed a Chapter 13 bankruptcy case on February 3, 2014 (Case No. 14-40258) to save her house. She confirmed a reorganization plan, but her case was dismissed on October 31, 2016, after her husband lost his job and she fell behind in her required plan payments.

7. The Debtor filed a second Chapter 13 case on December 6, 2016 (Case No. 16-42245) to save her house, which had been posted for foreclosure.

8. The Debtor's home was damaged by hail during her second bankruptcy case. The Debtor made an insurance claim, and the insurance company paid the proceeds of the claim (approximately $50,000) to Texans.

9. Texans subsequently moved to dismiss her case, alleging that she had not made all her required mortgage payments. The Debtor did not respond to Texans' motion, and her second case was dismissed on June 20, 2018.

10. After the dismissal of her second bankruptcy case, Texans posted the Property for a foreclosure sale to occur on August 7, 2018.

11. On August 6, 2018, the Debtor sued Texans in the 219th Judicial District Court of Collin County, Texas under Cause No. 219-03815-2018 (the "**State Court Litigation**"). In the State Court Litigation, the Debtor alleged that Texans, as the mortgagee, and Colonial Savings, FA, as the loan servicer, had improperly serviced her mortgage by failing to properly process her mortgage payments and insurance proceeds. The Debtor asserted claims for (1) breach of contract, (2) common law fraud, (3) promissory estoppel, (4) violations of the Texas Debt Collections Practices Act ("**TDCPA**"), (5) breach of the duty of cooperation, and (6) negligent misrepresentation. The Debtor sought actual and punitive damages, attorneys' fees under the TDCPA, attorneys' fees for breach of contract under § 38.001 of the Texas Civil Practices and

Remedies Code, and an order enjoining Texans from foreclosing on its interest in the Property during the pendency of the State Court Litigation.[1]

12. The court in the State Court Litigation entered a Temporary Injunction on September 25, 2018. The Temporary Injunction prohibited Texans from foreclosing, selling the Property, or proceeding with an eviction. The Debtor was required to pay $3,010 into the state court's registry each month pursuant to the Temporary Injunction.

13. In its answer to the State Court Litigation, Texans did not assert any counterclaims against the Debtor. Texans concluded its answer with a general prayer for relief, stating "Texans prays that upon hearing or trial of this matter, Plaintiff take nothing on her claims; Texans recover its attorneys' fees and costs; and the Court award such other and further relief to which Defendant Texans Credit Union may be justly entitled at law or in equity." Texans' answer did not identify whether it was seeking attorneys' fees based on the Deed of Trust, the TDCPA, § 38.001 of the Texas Civil Practices and Remedies Code, or on some other basis.

14. The State Court Litigation went to a jury trial the first week of February 2020 on the Debtor's claims for: (1) breach of contract related to the application of the insurance proceeds; (2) common law fraud; (3) violations of the TDCPA; and (4) negligent misrepresentation.

15. During the trial of the State Court lawsuit, Texans did not present any evidence of its attorney's fees or costs.

16. After a five-day trial, the jury returned a Verdict on February 7, 2020. The jury rejected all the Debtor's claims except for a violation by the defendants of § 392.304(a)(14) of the TDCPA, which prohibits a debt collector from misrepresenting the status or nature of its services.

---

[1] In addition to the Debtor's request for an injunction order, Texas Rule of Civil Procedure 736.11(a) provides that a foreclosure proceeding is "automatically stayed if a [payor under the loan] files a separate, original proceeding in a court of competent jurisdiction that puts in issue any matter related to the origination, servicing, or enforcement of the loan agreement, contract, or lien sought to be foreclosed …"

The jury specifically rejected the Debtor's claims that Texans had violated its obligations under the Note and Deed of Trust by failing to pay her the insurance proceeds upon her request.

17. Immediately after the jury returned its Verdict, but before the entry of a signed Final Judgment, Texans posted the Property for foreclosure. The Debtor filed her third Chapter 13 case on March 2, 2020 (Case No. 20-40646) to stop the foreclosure. The Debtor's bankruptcy case was dismissed for failure to make plan payments on September 23, 2021.

18. The state court entered a Final Judgment on August 13, 2021, in the State Court Litigation. The Final Judgment directed Texans to pay the Debtor actual damages of $16,000. The Final Judgment specifically stated that it disposed of all claims.[2]

19. Texans subsequently credited the Debtor's loan balance with the $16,000 awarded to her in the Final Judgment.

20. The Debtor filed the present Chapter 13 case, her fourth, on January 28, 2022. During the case, the Debtor entered into an agreed order with Texans allowing Texans to apply the funds held in the state court registry (approximately $51,000) pursuant to the Temporary Injunction to her debt under the Note.

21. On May 17, 2022, Texans filed Amended Proof of Claim No. 7 as a secured claim in the amount of $323,938.07 (the "**Claim**"). The Claim attaches the Note and Deed of Trust as well as a loan payment history.

---

[2] The Debtor argues that Texans' statement in its prayer for relief that it was seeking attorneys' fees was a "claim" that the state court denied in the Final Judgment. The Debtor therefor argues that *res judicata* bars Texans from seeking to add the attorneys' fees it incurred in the State Court Litigation to its Claim in this bankruptcy case. Even assuming the request for fees included in Texans' prayer for relief was a "claim," the Debtor failed to establish the that this claim was actually litigated and is the same as the claim for attorneys' fees in this proceeding as required for *res judicata* to apply. *Meza v. General Battery Corp.*, 908 F.2d 1262, 1265 (5th Cir. 1990) (describing the elements that must be met for *res judicata* to apply). Texans is seeking its fees in its bankruptcy Claim based on the Deed of Trust. In contrast, in the State Court Litigation, Texans did not disclose a basis for the requested award of attorneys' fees (*e.g.*, such as a citation to a contractual or statutory provision that would allow it to recover its attorneys' fees), the "claim" was not actually litigated, and the Final Judgment does not disclose the legal basis for denying such a "claim."

5

22. The Claim includes an alleged $101,781.95 in fees and costs due on the petition date. These fees and costs are comprised of: (i) late charges and inspection fees of $9,350.39; and (iii) prepetition attorneys' fees and expenses of $92,431.57.[3]

23. The Debtor filed an objection to the Claim on June 22, 2022. In her objection, the Debtor challenged the late charges and inspection fees as well as the inclusion of any attorneys' fees incurred by Texans in the State Court Litigation.

24. At the evidentiary hearing on the Debtor's objection to the Claim, the Debtor testified that her payments were not late and that she has made monthly payments each month in the amount Texans (or its servicer) instructed her to make. She also testified that Texans never actually inspected her Property – despite charging her a $15 "inspection" fee every month beginning in July 2015.

25. During the hearing, the Debtor conceded that $14,000 in attorneys' fees related to her prior bankruptcy cases and may be added to the balance of her loan pursuant to Section 9 of the Deed of Trust. The Debtor argued that the remaining balance of $78,431.57 is not recoverable under the Note or Deed of Trust and may not be added to the balance of her loan.

## II. DISCUSSION

### A. Burden of Proof

A proof of claim, if it is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, constitutes *prima facie* evidence of the validity and amount of that claim and is deemed allowed unless a party in interest objects. *See* 11 U.S.C. § 502(a); FED. R. BANKR.

---

[3] Counsel for Texans testified that the attorneys' fees his firm had charged for defending Texans from the Debtor's various claims were "inextricably intertwined" but that perhaps 5% of the fees specifically related to the claim on which the Debtor prevailed in the State Court Litigation. Thus, if this Court were inclined to deny Texans any fees in connection with the claim on which the Debtor prevailed, Texans argued that its requested fees should only be reduced by, at most, by 5%. This argument assumes, incorrectly as discussed in this memorandum opinion, that Texans is entitled to recover any of the attorneys' fees it incurred in defending itself from the Debtor's claims in the State Court Litigation.

6

P. 3001(f). Bankruptcy Rule 3001 generally sets forth the requirements for filing a proof of claim, and one of those requirements states that:

> when a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

FED. R. BANKR. P. 3001(c). Likewise, if a creditor claims a security interest in property of the debtor, Bankruptcy Rule 3001(d) requires the creditor to accompany his proof of claim with evidence that the creditor perfected a security interest.

Hence, the burden of persuasion under the bankruptcy claims procedure always lies with the claimant, who must comply with Bankruptcy Rule 3001 by alleging facts in the proof of claim that are sufficient to support the claim. If the claimant satisfies these requirements, the burden of going forward with the evidence then shifts to the objecting party to produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. *See Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2nd Cir. 2000). This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, *see In re Lenz*, 110 B.R. 523, 525 (D. Colo. 1990), or by the presentation of legal arguments based upon the contents of the claim and its supporting documents, *see In re Circle J Dairy, Inc.*, 112 B.R. 297, 300 (Bankr. W.D. Ark. 1989). If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence. *See In re Consumers Realty & Dev. Co.*, 238 B.R. 418 (B.A.P. 8th Cir. 1999); *In re Alleghany Int'l, Inc.*, 954 F.2d 167, 173-74 (3rd Cir. 1992).

In this case, Texans filed its Claim in compliance with the Federal Rules of Bankruptcy Procedure, including the attachment of a copy of the Note and the Deed of Trust upon which its Claim is based. Its Claim is, therefore, *prima facie* valid. The Debtor seeks to rebut its *prima facie* validity with respect to the fees and costs included in the Claim. In particular, the Debtor seeks to establish that Texans has improperly charged late fees and inspection fees totaling nearly $10,000. The Debtor also seeks to establish that most of the attorneys' fees Texans is seeking to include in its Claim fall outside the scope of the Note and Deed of Trust, Texans is barred by *res judicata* from seeking to recover the prepetition attorneys' fees it incurred in the State Court Litigation, and, alternatively, it would be inequitable to award Texans the attorneys' fees it incurred in the State Court Litigation.

### B. Attorneys' Fees

Under the "American Rule," each party to litigation pays its own fees arising out of the litigation, unless a fee-shifting provision exists pursuant to statute or contract. *See, e.g., Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). The parties in this case dispute whether (1) Texans must bear its own attorneys' fees incurred in the State Court Litigation under the American Rule or (2) whether Section 9 or Section 14 of the Deed of Trust allows Texans to charge its fees to the Debtor by adding its attorneys' fees to the balance due under the Note.

The Debtor argues that the Texas Supreme Court held in *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912 (Tex. 2015) that such fees fall outside the scope of the uniform Deed of Trust used in Texas and may not be added to the Debtor's loan balance. The borrowers in *Murphy* filed a declaratory judgment action against their lender whereby they challenged the lender's right to foreclose on their home. The borrowers obtained an automatic stay of the pending foreclosure

8

under Texas procedural rules. Texas Rule of Civil Procedure 736.11(a), which the Texas Supreme Court referenced in *Murphy*, provides that a foreclosure proceeding is "automatically stayed if a [payor under the loan] files a separate, original proceeding in a court of competent jurisdiction that puts in issue any matter related to the origination, servicing, or enforcement of the loan agreement, contract, or lien sought to be foreclosed …" *Id* at 914.

In the state court action in *Murphy*, the lender counterclaimed for declaratory judgment and requested its attorneys' fees pursuant to the Texas Uniform Declaratory Judgments Act. *Id.* at 915; *see also* TEX. CIV. PRAC. & REM. CODE § 37.009 (providing for fees and costs in a declaratory judgment action). The trial court awarded summary judgment to the lender and ordered the borrowers to pay the lender's attorneys' fees. The borrowers appealed, arguing that they were not personally liable for the lender's attorneys' fees because the loan agreement was non-recourse under Texas Constitution.

On appeal, as a predicate to determining personal liability, the Texas Supreme Court first considered whether the lender's attorneys' fees fell within the terms of the loan agreement. The loan documents at issue in *Murphy* were the same uniform Note and Deed of Trust at issue in this case. *Id*. at 918 (quoting sections of the uniform Note and Deed of Trust used in Texas). The Texas Supreme Court held that the fees awarded to the lender on its counterclaim for a declaratory judgment fell outside of the loan agreement, as follows:

> Wells Fargo was awarded its attorney's fees for defending against the Murphys' separate and original declaratory judgment action that invoked the automatic stay and dismissal provision of Texas Rule of Civil Procedure 736.11. This factual and procedural scenario presents three ways that the fee award may fall within one of the loan agreement's terms. First, Wells Fargo might have incurred "costs and expenses in enforcing th[e] Note." However, Wells Fargo is not enforcing the note but is rather defending against the Murphys' separate and original declaratory judgment action. Second, Wells Fargo might have incurred its attorney's fees because the Murphys failed "to perform the covenants and agreements contained in

9

> th[e] Security Instrument." Once again, however, Wells Fargo is defending against the Murphys' separate and original declaratory judgment action, rather than protecting itself against the Murphys' breach of covenants or agreements contained in the security instrument. Finally, Wells Fargo might have incurred its attorney's fees because "there is a legal proceeding that might significantly affect [its] interest in the Property." While there was a legal proceeding, it was not a legal proceeding of the kind contemplated by the security instrument, which addresses those proceedings in "bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations." These enumerated legal proceedings have two primary similarities: none of the covered proceedings are brought by the borrower directly against the lender, and none of the covered proceedings contest the merits of the underlying loan. The Murphys' separate and original declaratory judgment action does both, and therefore falls outside of this term's scope.

*Id.* at 918–19.  Since the lender's fees fell outside the scope of the loan agreement, the Texas Supreme Court reasoned that the fee award was not barred by § 50(a)(6)(C) of Article XVI of the Texas Constitution, which protects the homestead by requiring that an "extension of credit" must be without recourse for personal liability against each owner.  The Texas Supreme Court concluded: "Having initiated a separate and original proceeding, and having provided a mechanism for Wells Fargo to both incur and recover its attorney's fees, there is no basis for the Murphys to hide behind the nonrecourse status of their home-equity loan." *Id.* at 919.

!    In this case, similar to *Murphy,* the Debtor initiated litigation against Texans and thereby obtained a stay of a scheduled foreclosure.  As in *Murphy*, Texans was not enforcing the Note, protecting itself from the Debtor's breach of her obligations under the Note or Deed of Trust, or performing services in connection with the Debtor's default under the Note in the State Court Litigation.  Rather, as in *Murphy*, Texans incurred attorneys' fees defending itself from the Debtor's claims in a separate and original action.  In contrast to *Murphy,* however, Texans did not bring any counterclaim against the Debtor that would have given rise to a right to recover its attorneys' fees if successful.

10

Texans seeks to distinguish *Murphy*, citing to cases where lenders recovered fees incurred in connection with bankruptcy cases filed by borrowers. *See Countrywide Home Loans Servicing, L.P. (In re Countrywide)*, 660 F.3d 893 (5th Cir. 2011); *Velazquez v. Countrywide Home Loans Servicing, L.P. (In re Velazquez)*, 660 F.3d 893 (5th Cir. 2011). In this case, however, the fees the Debtor is challenging were not incurred because of the Debtor's bankruptcy cases. The Debtor clarified at trial that she objects to the prepetition fees Texans incurred in defending itself from her claims in the State Court Litigation – not to the $14,000 in attorneys' fees relating to her bankruptcy cases.

Texans also cites to cases awarding damages for wrongful injunctions. *See Jannise v. Enter. Prods. Operating, LLC*, 2019 WL 3432171 (Tex. App. – Houston [14th Dist.] July 31, 2019); *Ferguson v. Tanner Dev. Co.,* 654 S.W.2d 835 (Tex. App. – Houston [14th Dist] June 30, 1983). In this case, it is undisputed that the Debtor obtained an injunction while the State Court Litigation was pending. However, Texans has not established that the injunction was wrongful, nor did it seek or receive damages for a wrongful injunction in the State Court Litigation.

! At the hearing on the Debtor's objection to its Claim, Texans argued that *Swiss Ave. Bank v. Slivka*, 724 S.W.2d 394 (Tex. App. – Dallas 1986), stands for the proposition that it may charge the Debtor with the attorneys' fees it incurred in State Court Litigation because it could seek those fees as "damages" in a future claim for foreclosure. This argument mis-reads *Slivka*. In *Slivka*, a commercial borrower brought an action against his lender seeking to enjoin its foreclosure upon two properties. The trial court denied the injunction, and the bank once again posted the properties for foreclosure. To prevent the foreclosure, the borrower paid the bank the balance of the principal and interest then owing as well as the bank's attorneys' fees, which the loan documents specified would be calculated as 10% of the outstanding principal and interest. The borrower then filed a

11

second suit challenging the attorneys' fees, arguing that the loan provision requiring him to pay 10% of the outstanding principal and interest as presumptive attorneys' fees was an unreasonable fee for the legal services rendered to the bank in the second foreclosure action. The court of appeals reasoned that the bank was entitled to recover all its attorneys' fees arising from the attempted foreclosures, not just the fees from the second foreclosure proceeding, under the loan documents, and therefore the fee award was not unreasonable.

*Slivka* did not involve loan documents with language similar to the Note and Deed of Trust in this case or in *Murphy*. Further, there was no question in *Slivka* that the bank was entitled to recover the attorneys' fees it had incurred in seeking to foreclose on the properties under the terms of the loan documents – the dispute was whether the amount paid by the borrower was reasonable. Here, however, Texans did not incur the disputed fees in a foreclosure action or in an action to recover on the Note. The question in the present case, in contrast to *Slivka*, is whether the terms of the Note and Deed of Trust permit Texans to charge the Debtor for attorneys' fees it incurred defending itself from the Debtor's claims in the State Court Litigation.

Texans also directed this Court's attention to *Ilegbodu v. Specialized Loan Servicing, LLC*, 2018 W.L 993841 (N.D. Tex. Feb. 21, 2018), as an example of a case that permitted a lender to add its attorneys' fees to the balance of a note. Texans' argument mis-reads *Ilegbodu*. The district court was considering a motion to dismiss in *Ilegbodo,* and the issue was whether the lender had stated a counterclaim for attorneys' fees upon which relief could be granted. The district court declined to dismiss the counterclaim. The district court, quoting Section 9 of the uniform Deed of Trust used in Texas (which is identical to the Deed of Trust in this case), held that Section 9(a) entitles a borrower to recover its attorneys' fees "if it is able to ultimately prove the Plaintiffs as

12

Borrowers failed to perform as required under the Deed of Trust….." *Id.* at *4.  Texans did not make or establish such a counterclaim in the State Court Litigation.

In its post-trial brief, Texans also cited to *Smith v. Wells Fargo Bank, N.A.,* 2014 WL 3796413 (S.D. Tex, July 31, 2014), as supporting its argument that Section 9 of the Deed of Trust allows it to charge all its prepetition attorneys' fees to the Debtor.  In that case, the district court awarded the lender its attorneys' fees incurred in defending against the borrower's claims for breach of contract, fraud, and injunctive relief under "Section 7" of the "Deed of Trust." *Id*. at *3. The *Smith* opinion does not describe the "Deed of Trust," and it is unclear if its reference to "Section 7" is an error or if the document differs from the Deed of Trust at issue in the present case.  Section 7 of the Deed of Trust in the present case addresses preservation, maintenance, and inspection of the Property.  Further, this Court finds Texans' reliance on *Smith* unpersuasive because it is an unpublished decision from another federal district with no precedential value, it was decided on summary judgment, the *pro se* plaintiff did not respond to the lender's request for summary judgment, and the district court issued its unpublished decision prior to the Texas Supreme Court's decision in *Murphy*.

Finally, in its post-trial brief, Texans argues that Section 14 of the Deed of Trust provides an alternative ground for awarding attorneys' fees.  Section 14, like Section 9, provides: "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including … attorneys' fees …."  However, Texans is not seeking to charge the Debtor for attorneys' fees it incurred "for services performed in connection with the Borrower's default" or "for the purpose" of protecting its "interest in the Property and rights under" the Deed of Trust. Rather, as in *Murphy*, Texans is seeking to charge the Debtor for attorneys' fees it incurred

13

defending against the Debtor's claims that it had breached its contractual obligations to her and violated various Texas laws. And as in *Murphy*, Texans' attorneys' fees fall outside the scope of the Deed of Trust.

### C. Property Inspection Fees and Late Fees

The Debtor also objects to the $9,350.39 in late fees and inspection fees included in the Claim. At trial, the Debtor testified that her payments were not late, and that Texans never actually inspected her Property. She thereby shifted the burden to Texans to produce evidence establishing the validity of these charges. Texans failed to present any testimonial or documentary evidence to support the late fees or inspection fees included in its Claim.[4] Texas also failed to establish that monthly inspections of the Debtor's Property, even assuming they occurred, were reasonable or necessary. The Court, therefore, concludes that the Debtor's objection to the inspection fees and late fees included in Texans' Claim should be sustained.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that Texans has not established a legal basis for its claim that its attorneys' fees arising from the State Court litigation should be added to the debt under the Note. Texans likewise has not established the validity of the inspection fees and late fees included in its Claim. Accordingly, it is

**ORDERED** that the Debtor's objection to Texans' proof of claim is **SUSTAINED** as set forth herein, and it is further

---

[4] Texas argued that "*res judicata*" barred these objections, because the Debtor had not objected to any of the late fees or inspection fees included in the claims Texans had filed in her prior cases. Texans did not provide this Court with copies of any of the claims it filed in the Debtor's prior cases, and it is unclear from the record how its claims were treated in the Debtor's prior cases. Moreover, Texans failed to provide this Court with any authority to support an argument that the filing of a proof of claim, followed by a failure to object, is a final judgment engaging *res judicata* and prohibiting the Debtor from contesting anything included in that claim in the future.

**ORDERED** that Amended Proof of Claim No. 7 filed by **TEXANS CREDIT UNION** as a secured claim in the amount of $323,938.07 is hereby disallowed as filed; and it is further

**ORDERED** that Amended Proof of Claim No. 7 shall be allowed as a secured claim in the total amount of $236,156.11, which includes (i) the principal balance of $171,902.55, (ii) interest due in the amount of $36,312.17; (iii) attorneys' fees of $14,000, (iv) an escrow deficiency for funds advanced of $15,778.18, and (v) less total funds on hand of $1,836.79 on the petition date.

Signed on 09/26/2023

*Brenda T. Rhoades*   SD
HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE